Lauriat, J.
The defendant, Eric Brown (Brown), stands indicted on two charges of first degree murder (001-002), unlawful possession of a firearm (003), and unlawful possession of ammunition (004), arising from his alleged shotgun slaying of two individuals on Appleton Street in Boston on June 16, 1996.
On or about October 4, 1996, following a deterioration in Brown’s mental state and an apparent suicide gesture at the Nashua Street Jail in Boston, he was transferred and committed to the Bridgewater State Hospital (BSH) for observation pursuant to G.L.c. 123, § 18(a). (Exhibit 1.) Brown’s commitment to BSH was thereafter periodically reviewed and extended by the Brockton District Court. In April, 1998, Brown was found not competent to stand trial by the Superior Court (Patrick Brady, J.) pursuant to G.L.c. 123, § 16(b), and was thereupon committed to BSH pursuant to G.L.c. 123, § 15(b). In October, 1998, J. Nicholas Petrou, Ph.D., Forensic Mental Health Supervisor of BSH, found and reported that Brown was presently competent to stand trial, but recommended that he continue to await trial at BSH. As of the date of Dr. Petrous report, Brown was voluntarily taking Resperidol, an antipsychotic medication, twice dally. He was also taking Cogentin, for the side-effects of Trilfon, a more traditional antipsychotic medication that he had been taking at BSH prior to the Resperidol.
Brown has now moved for an order from this court directing that BSH withdraw his antipsychotic medications, so that he may be observed and recorded in an unmedicated state by counsel and the Commonwealth, as well as by experts on their behalf. The court conducted an evidentiary hearing on this motion on December 10 and 15, 1998. It heard testimony from Dr. Petrou, Dr. Ingunn Hodgson, Brown’s treating psychiatrist at BSH, and Dr. David Rosmarin, a forensic psychiatrist retained by counsel for Brown as an expert in this case. The court also received in evidence a redacted set of Brown’s medical records at BSH (Exhibit 1), and an unsigned affidavit from Brown (Exhibit 2).
Upon consideration of the credible testimony of the witnesses, the exhibits, and the memoranda and oral arguments of counsel, the court makes the following findings and rulings on the defendant’s present motion.
FINDINGS
The defendant is presently competent to stand trial. The fact that he has become competent to stand trial is due in large measure, although not entirely, to his treatment with Resperidol, an atypical antipsychotic medication, since the Spring of 1998. At that time, Brown’s treatment with Trilafon, a traditional antipsychotic drug, was terminated after he had failed to respond to that drug. With Resperidol, Brown has exhibited greater clarity in thinking and is less withdrawn, and his thoughts are more organized, focused and reality-based.
Brown’s continued competency to stand trial will likely depend upon his continued use of Resperidol, or Zypreza (Olanzapine), a similar antipsychotic drug that he has begun taking in recent weeks. Brown suffers from paranoid schizophrenia. If unmedicated, the symptoms of his mental illness will likely return, and he could present a serious risk of danger to himself or to others.
Although Brown is seeking a court order directing BSH to withdraw his present medications, he is taking those medications voluntarily and can cease doing so without prior court approval. Brown is presently competent to refuse medical treatment, including his present medications. If Brown stops taking his present medications, he will likely remain competent to stand trial for a period of time, the length of which cannot be accurately determined. He may also suffer an immediate rebound psychosis if his medications are stopped precipitously. At some point, if left unmedicated, Brown’s mental status will likely deteriorate, he will again suffer symptoms of his paranoid schizophrenia, and he will again become not competent to stand trial. This process of gradual decompensation and the return of the symptoms of Brown’s mental illness as a result of his lack of medication may occur over several weeks or even months. As Brown decompensates, he will also likely require a more restrictive setting at BSH, and a greater degree of observation by the hospital staff because of the risk that he will cause harm to himself or to others due to his illness.
Once Brown has been unmedicated for a period of time, it is -uncertain whether he can be successfully remedicated to the point of again being competent to stand trial. While Drs. Petrou and Hodgson suggest that Brown may suffer a blunting effect, that is, a less positive response to his medications if they are reintroduced after a period of non-medication, Dr. Rosmarin does not agree. The court finds, however, that if the defendant stopped taking his medications for a substantial period of time, there is a reduced likelihood that he would again become competent to stand trial, even if he were remedicated with these same or similar drugs.
RULINGS
Although observing Brown in an unmedicated state may be of some value to Dr. Rosmarin’s evaluation of Brown’s criminal responsibility and/or state of mind on June 16, 1996, the date of the alleged murders, it is not necessary or critical to that evaluation. Moreover, it is unclear whether Brown could safely remain unmedicated for a period of time sufficient to allow Dr. Rosmarin to observe and evaluate him, and then report to his attorney concerning his findings regarding Brown’s criminal responsibility, and thereafter, if requested by the Commonwealth, to allow its expert to observe and evaluate Brown on that issue.[1]
*363 Nor is it clear that observing, evaluating and videotaping Brown in an unmedicated state, presumably to allow the parties medical experts and perhaps the jury to observe him in the throes of his mental illness, would be relevant to or probative of any issue in this case. Indeed, the probative value of doing so would appear to be substantially outweighed by the risks that Brown would no longer be competent to stand trial and/or that he would not again become competent to stand trial in the future. The Commonwealth and Brown are both entitled to a prompt, rather than a protracted resolution of this case.
While the defendant may be entitled to present himself to a jury in an unmedicated condition, and allow the jury to assess his demeanor in that state, Commonwealth v. Gurney, 413 Mass. 97, 103 (1992), that scenario is not likely to arise here because all of the doctors agree that if Brown were to be unmedicated for a period of time, he would no longer be competent to stand trial. The court must also weigh the risks to Brown and to the staff at BSH if he is ordered to be unmedicated for a period of time, against the uncertainly that leaving Brown in an unmedicated state would allow any useful or observable results.[2] None of the doctors who testified at the hearing could predict when, or even if, Brown would decompensate and exhibit symptoms of his mental illness once his medications were removed. Their best estimates ranged from several weeks to more than a year. Under these circumstances, it is difficult to justify, or even to fashion an order that would adequately and appropriately protect the defendant, the Commonwealth, and the staff at BSH from the myriad of risks associated with terminating Brown’s present medications.
Furthermore, although the defendant is entitled to present to the jury any evidence which is at all probative of his mental condition, both before and after the alleged commission of a crime, Commonwealth v. Gurney, 413 Mass. at 102, quoting Commonwealth v. Louraine, 390 Mass. 28, 34 (1983), not every defendant who routinely is treated for mental illness is entitled to be observed by the jury in an unmedicated state. Commonwealth v. Gurney, 413 Mass. at 103. In some cases, the defendant’s demeanor in an unmedicated condition will not be relevant. Id. Similarly, evidence of a defendant’s medicated condition at trial will not be relevant in every case. Id. In the present case, if evidence that Brown’s claimed mental illness is being treated with antipsychotic drugs is deemed by the trial judge to be relevant at trial, Brown may present that evidence to the jury. Id.
Finally, as noted above, the defendant is presently competent to stand trial. He has been so found by Dr. Petrou, Dr. Rosmarin and the court. Concomitantly, Brown is competent to refuse to take his prescribed antipsychotic medications. Rogers v. Commissioner of the Department of Mental Health, 390 Mass. 489 (1983). As both parties concede, Brown does not need or require a court order before he may refuse to take his medications. He is now taking them voluntarily, and he has a constitutional right to stop his treatment at any time unless and until he is adjudicated incompetent by a judge through incompetency proceedings. Id. at 497.
Under these circumstances, the court is unwilling, in the exercise of its discretion, to order the medical personnel attending Brown to to cease to provide him with appropriate medical care and treatment, especially when Brown could effect the same result himself by refusing that mode of treatment. Moreover, Brown now appears competent to make that decision himself. See Affidavit of Defendant Regarding Future Medical Treatment and Medication (Exhibit 2).[3] Assuming that he does so of his own volition, the parties could thereafter, if necessary or desirable, move the court to allow Brown to be videotaped in an unmedicated state for potential presentation at trial. If Brown thereafter refused to be remedicated, his competence could be determined by the court. Id. at 499-00. If a court found Brown to be incompetent, the medical staff could petition the court for approval, on a substituted-judgment basis, to treat the defendant with antipsychotic drugs. Id. at 503-04. And if Brown posed an imminent threat to himself or others, and if there were no other less intrusive alternative to antipsychotic drugs, BSH could properly and without prior court approval, treat him on an emergency basis by an injection of antipsychotic drugs, even over his objection. Id. at 510-11. Forcible treatment with antipsychotic drugs may also be given to Brown, with appropriate safeguards, if necessary to prevent the immediate, substantial and irreversible deterioration of Brown’s mental illness. Id. at 512-13.
ORDER
For the foregoing reasons, and in the sound exercise of the courts discretion, the Defendant’s Motion For Order Directing The Bridgewater State Hospital To Withdraw The Defendant’s Antipsychotic Medication So That He May Be Observed And Recorded In An Unmedicated State is DENIED.

Simultaneous observation and evaluation of Brown by his expert and the Commonwealths expert would apparently be inappropriate and unproductive.

The doctors also acknowledge that in an unmedicated state, Brown may simply become more immobile, withdrawn and unresponsive than he has been observed to be while on his present medications, leaving little for the video camera to record.

Although Brown has not signed this affidavit, his counsel has represented to the court that Brown is ready, willing and competent to do so.